UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHEN SERKAIAN, et al.,

     Plaintiffs,

                                     Case No. 1:25-cv-1327

v.

                                     Hon. Hala Y. Jarbou

WHITE LAKE FIRE AUTHORITY, et al.,

     Defendants.

_____/

## **OPINION**

Now before the Court is Defendants Fruitland Township and Jeff Marcinkowksi's motion to dismiss (ECF No. 3).  For the reasons below, the motion will be granted in part and denied in part.

### **I. BACKGROUND**

Stephen and Colleen Serkaian were planning to build a home at 6555 Sheltering Way in Fruitland Township, Michigan.  In March 2022, they bought a vacant lot for their new home and started the planning and permitting process.  At some point during the planning process, Stephen Serkaian learned that the Defendant White Lake Fire Authority (WLFA) required certain homes to install fire-suppression systems when they were built off of roads with slopes greater than ten percent.  On August 14, 2023, Stephen Serkaian attended a meeting of the Fruitland Township Board of Trustees to complain about the requirement for a fire-suppression system.  He sent an email the next day reiterating his concerns about the wisdom of the policy.  In it, he explained that he had not accounted for a fire-suppression system as part of the design or financing of his new home because the township building code did not require it.  He expected to pay $34,300 to install a fire-suppression system based on his first estimate.

The Board of Trustees apparently ignored the Serkaians' concerns.  Later in August 2023, the Serkaians received a zoning permit and a building permit, but the zoning permit was only approved on the condition that the Serkaians sign a separate agreement to install a fire-suppression system.  Under the agreement, their fire-suppression system would need to be approved by Defendant Keith Heidelberg, the WLFA's Chief Deputy and Fire Marshall.  At some point either before or after they received their permits, the Serkaians met with Heidelberg and requested that he waive the requirement.  Heidelberg refused.

In October 2023, the Serkaians and their contractor signed the agreement to install a fire-suppression system as a condition of their zoning permit.  In January 2024, Heidelberg rejected the Serkaians' plans for a fire-suppression system, explaining how the plans could be adjusted to meet certain requirements.  The current status of the Serkaians' new home is unclear.[1]

Meanwhile, other home-builders have had their applications for a building permit rejected for their failure to include a fire-suppression system as part of their plans.  In letters to the home-builders, Heidelberg explained that their failure to include a fire-suppression system had violated the International Fire Code, which Fruitland Township had adopted by reference as part of its fire code.  In an effort to enforce the fire code, the WLFA has also issued at least one stop-work order for a home-builder's failure to install a fire-suppression system even though the home-builder had already received a building permit without any such system in their plans.

On October 6, 2025, the Serkaians and the Home Builders Association of Michigan (HBAM) filed a lawsuit in state court against the WLFA, Heidelberg, Fruitland Township Supervisor Jeff Marcinkowski, and Fruitland Township along with two other municipalities that

---

[1] Plaintiffs argue in their response that they had pleaded in their complaint that they installed the fire-suppression system.  But they only allege in their complaint that the Serkaians had incurred extra costs for the installation of a fire-sprinkler system and expected to pay more to have the system removed.  But it is not clear whether the system met the WLFA's requirements.

relied on the WLFA for its services, Whitehall Township and the City of Whitehall.  In the lawsuit, Plaintiffs allege that Defendants committed various violations of state law alongside violations of their rights under the Michigan and United States Constitutions.

On October 30, 2025, Marcinkowski and Fruitland Township removed this case to federal court.  They filed a motion to dismiss (ECF No. 3) and a brief to support their motion (ECF No. 4). Plaintiffs filed a response (ECF No. 15) and Marcinkowski and Fruitland Township filed a reply (ECF No. 17).

## II. LEGAL STANDARD

A party may assert a defense for "failure to state a claim" through a motion to dismiss under Rule 12(b)(6).  A motion to dismiss "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005).  So to survive the motion, the plaintiff's complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  If more than one reasonable inference can be drawn from an allegation, the Court construes the facts "in the light most favorable to the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  The Court must ignore any legal conclusions that are unsupported by factual allegations. *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

### A. Claims for Declaratory Judgment

Plaintiffs bring three claims for declaratory relief against Fruitland Township under Michigan law, Mich. Ct. R. 2.605.  At the outset, Fruitland Township and Marcinkowski argue

3

that they are not parties to Plaintiffs' claims for declaratory relief.  Although Plaintiffs do not mention Marcinkowski in their claims for declaratory relief, they do mention Fruitland Township alongside the other defendant municipalities.  Thus, Fruitland Township is a party to these claims.

Plaintiffs bring their claims for declaratory relief as three separate counts.  It is "technically improper" to plead declaratory relief as a claim because it "is a remedy, not a claim." *Wiggins v. City of Burton*, 805 N.W.2d 517, 561 (Mich. Ct. App. 2011).  But federal courts must look past such technicalities and read the complaint "as a whole." *Sturgill v. Am. Red Cross*, 114 F.4th 803, 807 (6th Cir. 2024).  Still, Defendants argue that Plaintiffs lack an underlying claim to support their requests for declaratory relief.  Although Defendants cite both Michigan and federal law to support their argument, state law applies when a federal court exercises supplemental jurisdiction over such claims, as it does here.  *See Davis v. Detroit Pub. Schs. Cmty. Dist.*, 835 F. App'x 18, 24 (6th Cir. 2020) (applying Michigan Court Rule 2.605 to determine standing for declaratory judgment); *Aarti Hosp., LLC v. Grove City*, 350 F. App'x 1, 5 (6th Cir. 2009) (applying state law to evaluate standing under Ohio's declaratory judgment statute).

Under Michigan law, "a litigant has standing whenever there is a legal cause of action" and "whenever a litigant meets the requirements of M[ichigan Court Rule] 2.605." *Lansing Schs. Educ. Ass'n v. Lansing Bd. of Educ.*, 792 N.W.2d 686, 746 (Mich. 2010).  Under Rule 2.605, a court "may declare the rights and other legal relations of an interested party seeking a declaratory judgment" regardless of whether "other relief could be sought or granted" as long as there is an "actual controversy." Mich. Ct. R. 2.605(A)(1).  The essential element of an "actual controversy" is that the plaintiff pleads facts that demonstrate an "adverse interest necessitating the sharpening of the issues raised." *Associated Builders & Contractors v. Dir. of Consumer & Indus. Servs.*, 693

4

N.W.2d 374, 379-80 (Mich. 2005).  An "actual controversy" exists when a declaratory judgment is necessary to guide a plaintiff's future conduct in order to preserve their legal rights. *Id.*

In the first claim, Plaintiffs allege that the Fruitland Township Fire Code's requirement for fire-suppression systems is preempted by Michigan's Stille-DeRossett-Hale Single State Construction Code Act (SSCA), Mich. Comp. Laws § 125.1501.  The Serkaians allege that Fruitland Township issued them a zoning permit on the condition that they signed a contract with the WLFA to install an approved fire-suppression system.  Thus, declaratory judgment is necessary to determine the Serkaians' rights under that contract and whether they can keep their zoning permit even without the installation of a fire-suppression system.

HBAM's interest as an association is based on the interests of its members.  If its members have a sufficient interest in the litigation, then so does HBAM.  *Lansing Schs. Educ. Ass'n*, 792 N.W.2d at 689 n.2.  According to the complaint, HBAM's membership includes home-builders who were denied permits or had projects suspended by the WLFA through Fruitland Township because it required fire-suppression systems.  Any HBAM member that continues work other than the work required to remedy a violation is subject to penalties.  2015 Mich. Residential Code, R114.2.  So like the Serkaians, HBAM's members have an adverse interest with respect to Fruitland Township and the enforcement of its fire code.  A declaratory judgment would be necessary here to help them determine their legal obligations going forward.

In the second claim, Plaintiffs allege that the WLFA is not qualified under the State Construction Code to enforce the requirement for fire-suppression systems.  Again, the fact that Fruitland Township conditioned the Serkaians' zoning permit on the installation of a fire-suppression system as approved by the WLFA is enough to show an actual controversy with Fruitland Township.  And the fact that an HBAM member in Fruitland Township faced a stop-

work order from the WLFA for failure to install a fire-suppression system is enough to show an actual controversy between HBAM and Fruitland Township on this claim too.

Finally, in the third claim, Plaintiffs allege that Fruitland Township failed to establish a construction board of appeals as required under the SSCA.  Under the SSCA, local governments enforcing the State Construction Code must have a construction board of appeals.  A construction board of appeals receives appeals after an enforcing agency "refuses to grant an application for a building permit" or "makes any other decision pursuant or related to [the SSCA] or the code." Mich. Comp. Laws § 125.1514(1).  The appeals board may hear appeals from "an interested person, or the person's authorized agent." *Id.*  Plaintiffs allege that an HBAM member was denied a building permit, and that the Serkaians' plans for a fire-suppression system were also denied.[2] Both plaintiffs were interested parties and, thus, entitled to an appeal of the WLFA's refusal to grant their applications.  As a result, Plaintiffs have standing for their third claim for declaratory judgment as well.

Because the Plaintiffs have standing to pursue their claims for declaratory relief, the next question is whether they have a legal basis for those claims.  Defendants' arguments about Plaintiffs' first two claims are waived because these arguments were raised for the first time in their reply and only argued in a cursory way.[3]  Reply briefs "do not provide the moving party with a new opportunity to present yet another issue for the court's consideration." *Scottsdale Ins. Co.*

---

[2] The Serkaians allege in their complaint that the WLFA "refused to issue a building permit" after it rejected their plans for a fire-suppression system.  (Compl. ¶ 35.)  But the Serkaians had already received a building permit (Compl. Ex. 10), and it is not clear from the letter denying their plans for a fire-suppression system that the denial amounted to a revocation of their building permit (Compl., Ex. 2).  At any rate, the Court must accept the Serkaians' allegation that the WLFA refused to issue a building permit as true at this stage.

[3] Defendants argue that the fire-suppression requirement and its enforcement by the WLFA was related to "the accessibility of fire equipment during a fire emergency" and that "[s]uch important governmental interests go beyond the limited purpose and scope of building code concerns."  (Reply 3.)  They do not cite any law or cases in support of this proposition or explain how their argument relates to Plaintiffs' claims.

*v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008).  Also, "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."  *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016).  It is not the court's job to make arguments on behalf of a party when they fail to do so in their motion.  *See Castellon-Vogel v. Int'l Paper Co.*, 829 F. App'x 100, 103 (6th Cir. 2020).

Unlike their arguments about the first and second claims, Defendants challenge the basis for Plaintiffs' third claim in their motion.  They argue that Plaintiffs should have appealed the WLFA's decisions through Fruitland Township's Zoning Board of Appeals or, in the alternative, that they should have directly appealed to Michigan's Construction Code Commission.  Although the Serkaians could have appealed to the Construction Code Commission, their claim is about the availability of an appeal on the municipal level as required under the SSCA—not the availability of any potential appeal in general.  *See* Mich. Comp. Laws § 125.1514(1) ("A construction board of appeals for each governmental subdivision enforcing the code *shall* be created." (emphasis added)).  In addition, HBAM members that had received stop-work orders would not have the option to appeal to the Zoning Board of Appeals because their grievance implicated an issue arguably related to the SSCA, not a zoning ordinance or administrative decision as required under Mich. Comp. Laws §125.3604(5) for an appeal to the zoning board.

## B. Fruitland Township's Violations of the Michigan Constitution

The Serkaians allege that Fruitland Township violated the Equal Protection and Due Process Clauses of the Michigan Constitution.  The Court addresses each set of claims below, analyzing the Serkaians' rights to both procedural and substantive due process.

### 1. Equal Protection

Article 1, § 2 of the Michigan Constitution provides that "[n]o person shall be denied the equal protection of the laws."  Mich. Const. 1963, art 1, § 2.  The Michigan Supreme Court has

7

interpreted this clause as a "deliberate effort to duplicate the protection secured by the federal clause." *Gora v. City of Ferndale*, 576 N.W.2d 141, 145 (Mich. 1998).  Under the federal clause, equal protection challenges are "typically concerned with governmental classifications that affect some groups of citizens differently than others." *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011) (citation modified).  But a plaintiff may bring a claim as a "class of one" when the plaintiff alleges that: (1) they have been "intentionally treated differently from others similarly situated"; and (2) "there is no rational basis for the difference in treatment." *Id.* (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)); *see also Shepherd Montessori Ctr. Milan v. Ann Arbor Charter Township*, 783 N.W.2d 695, 697-98 (Mich. 2010) (analyzing class-of-one claims as part of the Michigan Constitution).

For the first element of their claim, the Serkaians must allege that others were similarly situated, meaning others must be "*prima facie* identical in all relevant respects or directly comparable in all material respects." *Green*, 654 F.3d at 651 (quoting *United States v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008)) (citation modified).  Here, the relevant criteria for comparison are the 2015 International Fire Code's requirements for fire apparatus access roads, which is a general term for a road between the fire station and a given home or building.  Int'l Fire Code § 201.3 (2015).  If an access road does not meet certain minimum criteria, then the fire code applies, and so may its requirements for a fire-protection system.  *Id.* §§ 102.5, 901.4.4 ("Where the fire code official determines that access for fire apparatus is unduly difficult, the fire code official shall have authority to require additional safeguards[, including] automatic fire-extinguishing systems.").  The minimum criteria for a fire apparatus access road include the grade of the road as established

within limits by the fire code official,[4] *id.* § 503.2.7, an unobstructed width of the road not less than twenty feet, and an unobstructed vertical clearance of not less than thirteen feet and six inches, *id.* § 503.2.1.  If a home is on a part of a road that is not accessible under these criteria, but the WLFA failed to enforce the fire-suppression requirement for that home, then it is plausible that the Serkaians were intentionally treated differently than the owners of that home despite being similarly situated.

In their complaint, Plaintiffs allege that "another house on the same street" as the Serkaians' new home "has not been required to install a fire sprinkler system as a condition of obtaining a building permit."  (Compl. ¶ 83.)  They also allege, through Stephen Serkaian's email, that there are five homes on their street that do not currently have fire-suppression systems.  (Compl. Ex. 12, PageID.96.)  Plaintiffs do not allege whether the other homes also met or failed to meet the minimum requirements for fire apparatus access roads as described under the International Fire Code.  And the Court does not accept the legal conclusion that the other homes were similarly situated as used in the complaint.  As a result, Plaintiffs have failed to allege that the Serkaians were treated differently from others similarly situated, and so their equal protection claim is dismissed.

### 2. Substantive Due Process

The Due Process Clause of the Michigan Constitution provides that "[n]o person shall . . . be deprived of life, liberty or property, without due process of law."  Mich. Const. 1963, art. 1, § 17.  Michigan's due process clause "is coextensive with its federal counterpart."  *Mays v. Governor of Mich.*, 954 N.W.2d 139, 225 (Mich. 2020) (Viviano, J., concurring).  Thus, the Court

---

[4] The WLFA has enforced the fire-suppression requirement on roads with a grade of greater than ten percent.  (*See* Compl. Exs. 1, 3-6.)

9

interprets the Serkaians' claim under the Michigan Constitution alongside opinions expounding the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

The Due Process Clause provides "heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). When the government interferes with a fundamental right, that government action is subject to strict scrutiny, and "will be upheld only when [the government actions] are narrowly tailored to a compelling governmental interest." *Seal v. Morgan*, 229 F.3d 567, 574 (6th Cir. 2000). "Substantive due process protects a narrow class of interests, including those enumerated in the Constitution, those so rooted in the traditions of the people as to be ranked fundamental, and the interest in freedom from government actions that 'shock the conscience.'" *Snyder v. Village of Luckey*, No. 24-3530, 2025 WL 3269361, at \*9 (6th Cir. Nov. 24, 2025) (quoting *Bell v. Ohio State Univ.*, 351 F.3d 240, 249–50 (6th Cir. 2003)).

The Serkaians argue that, because they have alleged the violation of a right enumerated in the Michigan Constitution (namely, equal protection), Fruitland Township's actions here violated one of the narrow classes of interests protected by substantive due process. But, as the Court explained above, Plaintiffs failed to plead an equal protection claim.

Plaintiffs' equal protection claim aside, there is still a separate question whether Plaintiffs enjoy substantive due process protections because Fruitland Township's actions shocked the conscience. In the context of government actions or actors, a substantive due process violation occurs only when "the governmental conduct [is] so arbitrary and capricious as to shock the conscience." *Mettler Walloon, LLC v. Melrose Township*, 761 N.W.2d 293, 304 (Mich. Ct. App. 2008). For a government's actions related to building permits, "only the most egregious official

conduct can be considered arbitrary in the constitutional sense." *Cummins v. Robinson Township.*, 770 N.W.2d 421, 439 (Mich. Ct. App. 2009).

In this case, Fruitland Township's conditioning of its zoning permit on a fire-suppression system as approved by the WLFA does not shock the conscience. Even though the condition may be preempted by state law, that is not enough. According to the Michigan Court of Appeals, "a violation of state law in the land use planning process does not amount to a federal substantive due process violation." *Mettler Walloon*, 761 N.W.2d at 308 (citing *Torromeo v. Town of Fremont*, 438 F.3d 113 (1st Cir. 2006)). The Serkaians argue that it is enough that they alleged in their complaint that Fruitland Township's enforcement of its fire-suppression system requirement was arbitrary and capricious. But there are no other facts in the complaint to support that allegation, and the Court does not accept bare legal conclusions as true at this stage. As a result, the Serkaians' substantive due process claim against Fruitland Township will be dismissed.

### 3. Procedural Due Process

"To make out a claim for a violation of procedural due process, the plaintiff has the burden of showing that (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest." *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012).

The Serkaians argue that they have a property interest in the money they spent to install a fire-suppression system. They rely on a series of cases where, to comply with certain legal requirements, plaintiffs had to either pay the government or a third-party as a result of some government action. *See, e.g.*, *Clark v. Oliviera*, No. 2:15-CV-14041, 2016 WL 6834040, at *6 (E.D. Mich. Nov. 21, 2016) (recognizing increased payments to an auto insurance company as a result of an erroneous police report as a property interest); *Herrada v. City of Detroit*, 275 F.3d

11

553 (6th Cir. 2001) (acknowledging that money paid to the city to comply with a ticket based on an erroneous police report is a property interest).  The principle underlying these cases supports finding a property interest in this case since the Serkaians have a "legitimate claim of entitlement" to their money.  *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

The Serkaians argue that the process they received was inadequate because Fruitland Township had not established a construction board of appeals.  Procedural due process generally requires "an opportunity to be heard by an impartial decision maker at a meaningful time and in a meaningful manner."  *Mettler Walloon*, 761 N.W.2d at 313.  And as the Michigan Supreme Court has explained:

> The essence of due process is the requirement that a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it.  All that is necessary, then, is that the procedures at issue be tailored to the capacities and circumstances of those who are to be heard to ensure that they are given a meaningful opportunity to present their case, which must generally occur before they are permanently deprived of the significant interest at stake.

*Bonner v. City of Brighton*, 848 N.W.2d 380, 396 (Mich. 2014) (citation modified).

The parties dispute what kind of opportunities were available to the Serkaians.  Defendants argue that there were two separate processes available to the Serkaians.  First, they could have either appealed any decision related to the SSCA to the Construction Code Commission or requested that Fruitland Township convene a construction board of appeals to take their appeal directly.  Second, they could have appealed to Fruitland Township's Zoning Board of Appeals.  Plaintiffs argue that they could not have gone to the Zoning Board of Appeals because their issue with the new construction was a building code issue, not a zoning issue.  They argue that the only process that was available to them was to attend a meeting of the Fruitland Township Board of Trustees prior to receiving their permits.

The Serkaians are incorrect about their inability to appeal to the Zoning Board of Appeals. The condition placed on their zoning permit (to install a fire-suppression system as approved by the WLFA) was part of a decision made by the zoning administrator when they issued it to the Serkaians.  This condition on the zoning permit creates an opportunity for an appeal.  Under Michigan law, "[i]f the zoning board of appeals receives a written request seeking . . . an appeal of an administrative decision, the zoning board of appeals shall conduct a public hearing on the request."  Mich. Comp. Laws § 125.3604(5).  If the Serkaians had appealed to the Zoning Board of Appeals and were not satisfied with its response, they would have also had an opportunity to appeal again in state court.  *Id.* § 125.3605.

The Serkaians also had an opportunity to appeal the WLFA's denial of their planned sprinkler system regardless of whether the construction board of appeals existed to accept such an appeal.  As described earlier, a construction board of appeals receives appeals after an enforcing agency "refuses to grant an application for a building permit" or "makes any other decision pursuant or related to [the SSCA]."  Mich. Comp. Laws § 125.1514(1).  If a board of appeals fails "to hear an appeal and file a decision" within thirty days, then the appeal is considered denied and, as a result, it is appealable to the Construction Code Commission.  *Id.*  If the board of appeals does not, for whatever reason, even receive the appeal, then the complainant may go straight to the state commission.  *See, e.g.*, *Forner v. Tallmadge Charter Township*, No. 350118, 2021 WL 70608, at *1 (Mich. Ct. App. Jan. 7, 2021).

The fact that the Serkaians did not take advantage of these opportunities to be heard does not matter.  What matters is whether these opportunities existed to remedy their grievance at a meaningful time and a meaningful manner before they had to spend money on a fire-suppression

system.  These opportunities existed in that way here, and so the Serkaians have failed to state a procedural due process claim under the Michigan Constitution.

### C. Marcinkowski's Violations of the U.S. Constitution

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law."  *Meirs v. Ottawa County*, 821 F. App'x 445, 450 (6th Cir. 2020).

In their response, the Serkaians argue that their allegations against Fruitland Township for violations of their equal protection and due process rights under the Michigan Constitution are sufficient to also state a claim against Marcinkowski for violations of the same rights under the United States Constitution.  In their complaint, they specifically allege that Marcinkowski oversaw "Fruitland Township[] and [the] WLFA's illegal and arbitrary fire suppression requirements." (Compl. ¶ 88.)  And, "as a direct and proximate result" of Marcinkowski's conduct, "the Serkaians incurred damages for the increased cost of installing the fire sprinkler system and increased construction loan costs."  (*Id.* ¶ 90.)  Plaintiffs do not allege any facts explaining how Marcinkowski participated in the alleged violations aside from his name on Fruitland Township letterhead featuring the zoning agreement and his presence at a meeting of the Fruitland Township Board of Trustees where Stephen Serkaian complained about the fire-suppression requirement.

The Serkaians' allegations are not enough to state a claim against Marcinkowski under § 1983.  "Section 1983 liability of supervisory personnel must be based on more than the right to control employees." *Sexton v. Cernuto*, 18 F.4th 177, 185 (6th Cir. 2021) (internal quotation marks omitted).  "As with all § 1983 claims brought against an individual officer, personal involvement in the alleged constitutional violation is a prerequisite to liability." *Alford v. Deffendoll*, 165 F.4th 490, 497 (6th Cir. 2026).  "[T]here must be a causal connection between the officer's actions and

14

the alleged constitutional violation." *Id.* (internal quotation marks omitted). This causal connection can be accomplished by, for example, "a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Sexton*, 18 F.4th at 185 (citation modified). In this case, the Serkaians' have made no such showing and, thus, failed to show a causal connection between Marcinkowski's actions as township supervisor and a violation of their equal protection or due process rights.

## IV. CONCLUSION

For the reasons above, the Court will grant Defendants Jeff Marcinkowski and Fruitland Township's motion to dismiss (ECF No. 3) with respect to the Serkaians' claims for violations of their equal protection and due process rights under the Michigan Constitution by Fruitland Township and violations of the Serkaians' due process and equal protection rights under the U.S. Constitution by Marcinkowski. With no claims remaining against Marcinkowski, the Court will dismiss him from the case.

The Court will deny Defendant's motion to dismiss with respect to Plaintiffs' claims for declaratory relief as alleged in Counts I, II, and III of their complaint.

An order will enter consistent with this Opinion.


Dated: March 16, 2026                    /s/ Hala Y. Jarbou
                                         HALA Y. JARBOU
                                         CHIEF UNITED STATES DISTRICT JUDGE

15