UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHEN SERKAIAN, et al.,

     Plaintiffs,

                                    Case No. 1:25-cv-1327

v.

                                    Hon. Hala Y. Jarbou

WHITE LAKE FIRE AUTHORITY, et al.,

     Defendants.

_____/

## OPINION

Now before the Court is Plaintiffs Home Builders Association of Michigan, Stephen Serkaian, and Colleen Serkaian's motion to amend their complaint (ECF No. 31).  For the reasons below, the Court will deny in part and grant in part the motion.

## I. BACKGROUND

The Serkaians were preparing to build a home in Fruitland Township.  Defendant Fruitland Township issued the Serkaians a zoning permit on the condition that they would sign an agreement with Defendant the White Lake Fire Authority (WLFA) to install a fire-suppression system.  The fire-suppression system was to be installed as required under the 2015 International Fire Code, which Fruitland Township had adopted by reference.  The Serkaians filed this lawsuit, alleging that Fruitland Township's ordinance adopting the 2015 International Fire Code was preempted by state law.  They also alleged that Fruitland Township had violated their equal protection and substantive due process rights under the Michigan Constitution.[1]

---

[1] The Court provided a more thorough summary of the claims and parties in its prior opinion.  (*See* 3/16/2026 Op. 1-3, ECF No. 27.)

On March 16, 2026, the Court dismissed the Serkaians' claims under the Michigan Constitution for failure to allege sufficient facts to support them.  (*See* 3/16/2026 Op., ECF No. 27; 3/16/2026 Order, ECF No. 28.)  On April 15, 2026, Defendants filed a motion to amend or correct their complaint (ECF No. 31) along with a brief in support of their motion (ECF No. 32) and a copy of their proposed amended complaint (ECF No. 31-1).  Fruitland Township filed a response in opposition to the motion (ECF No. 39), arguing that the proposed amended complaint was futile.

## II. LEGAL STANDARD

When more than twenty-one days have passed since a defendant responded to a complaint, the plaintiff can only amend the complaint with consent of the defendant or leave of the Court. Fed. R. Civ. P. 15(a).  "The court should freely give leave when justice so requires."  *Id.* 15(a)(2). "Denial may be appropriate, however, where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'"  *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## III. DISCUSSION

### A. Futility of Amendment

Fruitland Township argues that the Court should deny leave because the proposed amendment would be futile.  "An amendment is futile when, after including the proposed changes, the complaint still 'could not withstand a Rule 12(b)(6) motion to dismiss.'"  *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 737 (6th Cir. 2022) (quoting *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010)).  To survive a Rule 12(b)(6) motion, a plaintiff's complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While "[t]he plausibility

standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility"

that the alleged misconduct occurred.  *Id.*  When considering a motion under Rule 12(b)(6), courts

"construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded

factual allegations as true."  *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017).  The Court need

not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements," *Iqbal*, 556 U.S. at 678, or "formulaic recitation of the elements of a cause of action,"

*Twombly*, 550 U.S. at 555.

### 1. Equal Protection

Article 1, § 2 of the Michigan Constitution provides that "[n]o person shall be denied the

equal protection of the laws."  Mich. Const. 1963, art. 1, § 2.  The Michigan Supreme Court has

interpreted this clause as a "deliberate effort to duplicate the protection secured by the federal

clause."  *Gora v. City of Ferndale*, 576 N.W.2d 141, 145 (Mich. 1998).  The federal Equal

Protection Clause, like Michigan's clause, "typically concern[s] . . . governmental classifications

that affect some groups of citizens differently than others."  *United States v. Green*, 654 F.3d 637,

651 (6th Cir. 2011) (citation modified).  But a plaintiff may bring a claim as a "class of one" when

the plaintiff alleges that: (1) they have been "intentionally treated differently from others similarly

situated"; and (2) "there is no rational basis for the difference in treatment."  *Id.* (quoting *Village

of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)); *see also Shepherd Montessori Ctr. Milan v.

Ann Arbor Charter Township*, 783 N.W.2d 695, 697–98 (Mich. 2010) (analyzing class-of-one

claims as part of the Michigan Constitution).

### (a) Similarly Situated

The Serkaians plead sufficient facts in their proposed amended complaint to allege that

Fruitland Township intentionally treated them differently from others similarly situated.  For

others to be similarly situated, they must be "*prima facie* identical in all relevant respects or

directly comparable in all material respects." *Green*, 654 F.3d at 651 (quoting *United States v.*

*Moore*, 543 F.3d 891, 896 (7th Cir. 2008)) (citation modified).  In their initial complaint, the

Serkaians merely alleged that other homeowners were "similarly situated."  (3/16/2026 Op. 11.)

In its opinion, the Court ignored that legal conclusion and held that the relevant criteria for

comparison involved, in part, the conditions cited by Fruitland Township and the WLFA for the

enforcement of the fire-suppression system requirement:

> Here, the relevant criteria for comparison are the 2015 International Fire Code's
> requirements for fire apparatus access roads, which is a general term for a road
> between the fire station and a given home or building.  Int'l Fire Code § 201.3
> (2015).  If an access road does not meet certain minimum criteria, then the fire code
> applies, and so may its requirements for a fire-protection system.  *Id.* §§ 102.5,
> 901.4.4 ("Where the fire code official determines that access for fire apparatus is
> unduly difficult, the fire code of official shall have authority to require additional
> safeguards[, including] automatic fire-extinguishing systems.").  The minimum
> criteria for a fire apparatus access road include the grade of the road as established
> within limits by the fire code official, *id.* § 503.2.7, an unobstructed width of the
> road not less than twenty feet, and an unobstructed vertical clearance of not less
> than thirteen feet and six inches, *id.* § 503.2.1.

(*Id.* at 8–9 (footnote omitted).)

In their proposed amended complaint, the Serkaians add allegations about the owners of

six other homes, whom they argue were similarly situated and treated differently.  Specifically,

they allege that the six homes "were not required to have fire suppression systems" despite each

home "being equally subject to the effects of Sheltering Way's alleged failure to meet minimum

fire apparatus access requirements."  (Proposed Am. Compl. ¶ 81.)

The Serkaians first allege that Fruitland Township failed to enforce a fire-suppression

system requirement on a home built in 2006 under an earlier version of the 2015 International Fire

Code.  But for the purposes of a relevant comparator, courts must look to others who were subject

to enforcement around the same time as the plaintiffs. *See Green Genie, Inc. v. City of Detroit*, 63

F.4th 521, 528 (6th Cir. 2023).  The owners of this home presumably applied for and received a

4

zoning permit almost twenty years before the Serkaians did.  Given the difference in time, the owner of this first home is not similarly situated to the Serkaians.

The Serkaians then allege that Fruitland Township failed to enforce its fire-suppression system requirement on a home that was "relocated from elsewhere" in 2020.  (Proposed Am. Compl. ¶ 81(d).)  They allege that this home was subject to the 2015 International Fire Code under a Fruitland Township ordinance providing that "[a]ny structure or building to be repaired must be in conformity or made to conform during the repair with the building, electrical, plumbing, and fire codes, as provided in this Ordinance, or as amended."  Fruitland Twp., Mich., Regulatory Ordinances § R 41.05, https://perma.cc/9A25-PN2G.  The Serkaians do not allege that the relocation of the home involved any repairs, and so they have failed to allege sufficient facts to conclude that the ordinance (and, by extension, the 2015 International Fire Code) would apply here.  The Court must ignore any legal conclusions, like the applicability of an ordinance, unsupported by facts at this stage.  Thus, the owner of this second home is not similarly situated to the Serkaians either.

The Serkaians also allege that Fruitland Township failed to enforce the fire-suppression requirement on a home that was fully gutted and remodeled in 2022.  They again argue that this home was subject to the 2015 International Fire Code under § R 41.05.  This time, the Court can reasonably infer that the gutting and remodeling involved repairs as described in § R 41.05.  But the Serkaians still fail to allege that this home was similarly situated because this home was renovated, not constructed, and the Serkaians do not allege that it went through the process of applying for and receiving a zoning permit.  It is also unclear from the proposed amended complaint whether the 2015 International Fire Code's fire-suppression requirement applies to existing structures and, if so, what criteria the WLFA had used to enforce this requirement on other

homes.   Thus, the Serkaians fail to allege sufficient facts to show that the owner of the third home is similarly situated.

The Serkaians finally allege that there are three other homes that were under construction sometime after the Serkaians had sent a demand letter to Defendants.  Because these homes were under construction when the Serkaians sent their demand letter, it is reasonable to infer that these homes applied for and received a zoning permit around the same time as the Serkaians did.  Unlike the Serkaians' home, however, these homes "were not required to have fire suppression systems." (Proposed Am. Compl. ¶ 81.)  As a result, the owners of these three homes were treated differently from the Serkaians despite being similarly situated, and the Serkaians have alleged sufficient facts to support the first element of their equal protection claim.

### (b) Rational Basis

There is no rational basis for enforcement against the Serkaians but not against others similarly situated.  "To survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *Bower v. Village of Mt. Sterling*, 44 F. App'x 670, 677 (6th Cir. 2002) (quoting lower court decision citing *Wroblewski v. City of Washburn*, 965 F.2d 452, 459-60 (7th Cir. 1992)). To allege a lack of a rational basis, a plaintiff must allege sufficient facts by either "negativing every conceivable basis which might support the government action," or "showing that the challenged action was motivated by animus or ill-will." *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 788 (6th Cir. 2005).

There are no allegations in the proposed complaint to support that the WLFA or Fruitland Township acted with animus or ill-will toward the Serkaians.  So to meet their burden, the Serkaians must negative every conceivable basis that might support the enforcement of the fire-suppression system requirement against them.  Fruitland Township argues that fire safety is one

6

conceivable basis for its enforcement.  Specifically, it argues that it is rational to enforce the fire-suppression system requirement when homes are difficult to access.  That may be true, but what matters for an equal protection claim is whether Fruitland Township had a rational basis for enforcing the fire-suppression requirement against the Serkaians as a condition of their zoning permit while not enforcing the same requirements against other similarly situated homeowners. *See Boone v. Spurgess*, 385 F.3d 923, 932 (6th Cir. 2004) (explaining that a party needs to allege that a government actor lacked a rational basis to enforce law against one party eligible for enforcement but not another).  In other words, it is the difference in enforcement—not just the reason behind enforcement in general—that must be rational.

Fruitland Township does not identify any reason for the difference in enforcement between the Serkaians and the three other houses similarly situated.  The Court is unable to identify any conceivable, rational reason for this different treatment in enforcement.  Accordingly, the Serkaians have satisfied the second prong of their class-of-one claim, and the Court will grant their motion to amend with respect to this claim.

### 2. Substantive Due Process

The Due Process Clause of the Michigan Constitution provides that "[n]o person shall . . . be deprived of life, liberty or property, without due process of law."  Const. 1963, art. 1, § 17. Michigan's due process clause "is coextensive with its federal counterpart."  *Mays v. Gov'r of Mich.*, 954 N.W.2d 139, 225 (Mich. 2020) (Viviano, J., concurring).  Thus, the Court interprets the Serkaians' claim under the Michigan Constitution alongside opinions expounding the Due Process Clause in the Fourteenth Amendment of the U.S. Constitution.

The Due Process Clause provides "heightened protection against government interference with certain fundamental rights and liberty interests."  *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).  When the government interferes with a fundamental right, that government action is

subject to strict scrutiny, and "will be upheld only when [the government actions] are narrowly tailored to a compelling governmental interest." *Seal v. Morgan*, 229 F.3d 567, 574 (6th Cir. 2000). "Substantive due process protects a narrow class of interests, including those enumerated in the Constitution, those so rooted in the traditions of the people as to be ranked fundamental, and the interest in freedom from government actions that 'shock the conscience.'" *Snyder v. Village of Luckey*, No. 24-3530, 2025 WL 3269361, at *9 (6th Cir. Nov. 24, 2025) (quoting *Bell v. Ohio State Univ.*, 351 F.3d 240, 249-50 (6th Cir. 2003)).

Government actions that "shock the conscience" mean actions that are "so arbitrary and capricious as to shock the conscience." *Mettler Walloon, LLC v. Melrose Township*, 761 N.W.2d 293, 304 (Mich. Ct. App. 2008). For a government's actions related to building permits, "only the most egregious official conduct can be considered arbitrary in the constitutional sense." *Cummins v. Robinson Township*, 770 N.W.2d 421, 439 (Mich. Ct. App. 2009).

In its opinion, the Court dismissed the Serkaians' substantive due process claim in part because even if Fruitland Township's ordinance were preempted by state law, that still would not be sufficient to shock the conscience. (3/16/2026 Op. 11 (citing *Mettler Walloon*, 761 N.W.2d at 304).) The Court also held that the Serkaians had failed to allege any facts to conclude that Fruitland Township's actions were arbitrary or capricious. (*Id.*)

Now, the Serkaians argue in their motion to amend that Fruitland Township's enforcement shocked the conscience through "the wholly haphazard way these requirements were imposed" and "apparently retaliatory red tagging." (Mot. to Am. Br. 3, ECF No. 32.) But there are no new allegations in the Serkaians' proposed amended complaint to support this argument. Thus, the allegations in the proposed amended complaint are still insufficient to state a claim for the violation of the Serkaians' substantive due process rights under the Michigan Constitution.

## IV. CONCLUSION

For the reasons above, the Court will grant Plaintiffs' motion to amend their complaint with respect to their equal protection claims under the Michigan Constitution.  The Court will deny the motion with respect to Plaintiffs' substantive due process claims.  For clarity, the surviving claims in Plaintiffs' amended complaint are their declaratory judgment claims (Counts I-IV), their equal protection claims against Fruitland Township (Count V), their equal protection and due process claims against the WLFA (Count V), and their § 1983 claims against Defendant McCarthy (Count VI).

An order will enter consistent with this Opinion.

Dated: June 5, 2026                          /s/ Hala Y. Jarbou
                                             HALA Y. JARBOU
                                             CHIEF UNITED STATES DISTRICT JUDGE